UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARBARA JEAN SEIL,

              Plaintiff,                     DECISION AND ORDER

vs.                                               15-CV-6275 CJS

CAROLYN W. COLVIN,  Acting Commissioner
of Social Security,

              Defendant.

_____

## INTRODUCTION

**Siragusa, J.** This Social Security appeal is before the Court on cross-motions for judgment on the pleadings. Pl.'s Mot., Oct. 16, 2015, ECF No. 7; Comm'r's Mot., Dec. 14, 2015, ECF No. 8. Following a review of the papers and oral argument, for the reasons stated below, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for a rehearing.

## FACTUAL BACKGROUND

Plaintiff Barbara Jean Seil ("Seil") seeks an order granting judgment and ordering the calculation of benefits, or in the alternative, a remand for a new hearing. The Commissioner opposes the motion and asks the Court for an order affirming her decision.

On September 22, 2011, Seil filed for disability benefits under Title II of the Social Security Act, with an alleged onset date of April 12, 2009. R. 18, 157. Following denial of her claim, she appeared for a hearing before an Administrative Law Judge ("ALJ") on

March 18, 2013, where she gave testimony, was represented by counsel, and heard testimony from a vocational expert. R. 18. Following the hearing, the ALJ issued a written decision on April 12, 2013, finding that Seil could perform sedentary work, therefore denied her disability benefits. That decision was affirmed by the Appeals Council.

At the hearing, Seil testified relevant to one of the issues now raised in her motion before the Court: "The ALJ Failed to Rely on Any Medical Expert Evidence to Support his Residual Functional Capacity Assessment, Resulting in a Finding Not Support[ed] by Substantial Evidence." Pl.'s Mem. of Law 14, Oct. 16, 2015, [ECF No. 7-1](ECF No. 7-1). Specifically, Seil argues that "there is no medical evidence that [her] severe physical impairments could actually be ameliorated in the workplace by the highly specific limitations included by the ALJ. As such, his RFC finding amounts to an improper insertion of his own law opinion into his determination . . . ." *Id.*

The ALJ determined that Seil suffered from the severe impairments of "lumbar spinal stenosis; disc protrusion/disc extrusion at L3-L4; L4-L5 disc disease; lumbar radiculopathy; status post lumbar laminectomy (approx. 1986); neck pain, musculoskeletal in nature; left shoulder pain, musculoskeletal in nature; asthma; obesity; and B-12 deficiency/fatigue . . . ." R. 20. He also determined that these impairments did not meet or exceed any listing. R. 21.

Notwithstanding her severe impairments, however, the ALJ found that Seil could, *inter alia*, "stand and/or walk at least two hours in an eight hour workday; sit about six hours in an eight hour workday; be allowed to sit for one to two minutes after standing for 15 minutes and be allowed to stand for one to two minutes after sitting for 30 minute . . . ." R. 21.

In her testimony, Seil was questioned about her ability to stand, walk, and sit in relation to work. Her counsel asked her the following questions and she gave the following answers:

> Q. Okay. All right, so what types of things makes your back pain worse?
>
> A. Walking, standing, sitting for too long.
>
> Q. Okay. So, in a chair like that, kind of a padded office chair, do you have any pain at all?
>
> A. Yes.
>
> Q. Okay. How soon would it be where the pain increased where you would have to get and stand or walk?
>
> A. Probably 15, 20 minutes.
>
> Q. Okay. And then, you said walking increases pain as well?
>
> A. Yes. I lose feeling in my left leg.
>
> Q. And is that just with walking, or with other activities?
>
> A. Walking and standing.
>
> Q. Okay. So, how far can you walk before you have to take a break or a rest?
>
> A. 25, 50 feet. That's a large difference; I'll say 50 feet.
>
> Q. Okay. And then, what would happen at that point?
>
> A. The pain would be severe enough where I'd have to bend or at least stop to break the pain.
>
> Q. Okay. And how -- if you're standing in one spot without walking around -- how long do you think you can stand before you either have to sit down or walk around?
>
> A. Between five and 10 minutes.

R. 45–46.

> Q. Okay. So, what are you doing now to help pass the time?
>
> A. Unfortunately, I'm on the computer a lot.

* * *

>Q And how long do you think you can sit at the computer for and use it before you have to take a break?
>
>A. A couple hours. But that's not on a consistent basis. I mean, that's getting up and moving.
>
>Q. Okay, so that would be total in a day would be a couple hours?
>
>A. Yes.

R. 49.

In his questions to the Vocational Expert ("VE"), the ALJ incorporated some standing, walking, and sitting limitations when he formulated his hypotheticals, asking the VE to assume an individual "limited to a sedentary exertional level" who could "stand and/or walk at least two hours in an eight hour day; sit about six hours in an eight hour day; be allowed to sit one [or] two minutes after standing for 15 minutes; be allowed to stand for one to two minutes . . . after sitting for 30 minutes." R. 59. The VE identified jobs Seil could perform as information clerk and calculating machine operator. R. 60. When the ALJ added a further limitation to his hypothetical, "occasionally handle and finger with the dominant right arm hand," the VE responded "that would knock out the calculating machine operator" job. R. 60–61.

Seil's then counsel asked the VE to add to the ALJ's second hypothetical that Seil would have to walk away from her job on an unscheduled basis due to pain "as needed, five minutes, every hour." R. 64. The VE then responded "you can't walk away when dealing with the public or a situation like that," and she could not, therefore, perform the position he previously testified about: information clerk. R. 64.

**JURISDICTION AND SCOPE OF REVIEW**

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence. *See, Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (finding that the reviewing court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

**THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION**

An ALJ is required to obtain necessary medical records in order to make a proper assessment of a claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1513(b) ("Medical reports should include—(6) A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings . . . . [L]ack of the medical source statement will not make the report incomplete."); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

At the same time, however, the Court of Appeals has written that "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight. No such counterintuitive presumption exists." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In *Halloran*, the plaintiff argued that the ALJ had erred when finding that the claimant could perform sedentary work "if 'she is given several breaks or allowed to change positions often….'" *Id.* (quoting the record in that case). In determining that the sitting and standing requirements for sedentary work, as defined in the Commissioner's regulations (61 Fed. Reg. 34478, 34480 (Social Security Admin. July 2, 1996)), the Circuit Court held that the regulation did not actually mean "that a sedentary worker must be able to sit for six unbroken hours without standing up or shifting position during a work day." *Id.*

At oral argument, the Commissioner, although conceding that the ALJ's inventive restrictions on Seil's standing, walking, and sitting, were created out of whole cloth, and were not supported by medical evidence, nonetheless, argued that the Court could affirm the ALJ's decision. The Commissioner's counsel reasoned that since no medical evidence supported *any* restrictions on Seil's ability to sit, if the case were remanded, the ALJ could find that he overstated the restrictions, and would remove them entirely.

The medical evidence at the hearing consisted of reports from the following: John Robb, M.D., Seil's physician; Raymond C. Montanaro, RPA-C, of Greater Rochester Orthopedics; Nathan Khishchenko, M.D., at Unity Rehabilitation and Neurology; and Sandra Boehlert, M.D., a consultative examiner. Of these, only Dr. Boehlert provided an opinion about Seil's RFC, writing that Seil had

> Mild limitation to heavy lifting, heavy bending, twisting of the lumbar spine, or exertional activity in the standing position. Avoid respiratory irritants secondary to pulmonary disease. Mild limitation to repetitive overhead reach with the left shoulder or heavy push/pull with the left shoulder. Mild limitation to bending/twisting of the lumbar spine.

R. 289. Raymond C. Montanaro noted that Seil could "walk 50-100 feet before taking a break." R. 303. The other medical sources commented on their examination findings, but gave no opinion as to whether Seil could stand, walk, or sit for hours during a work day.

However, as Seil's counsel pointed out, Dr. Khishchenko did address limitations, essentially creating a "sit/stand" option. The doctor wrote that Seil "notes radiating pains and numbness in both thighs, medially and laterally after exertion or when in pain; brief rest or changing positions will rapidly normalize these symptoms." R. 294. The Commissioner's counsel contended that the sentence above was simply Seil's narration to Dr. Khishchenko, not the doctor's own recommendation, to which Seil's counsel responded that if the note was unclear, then the ALJ had an obligation to obtain further information from the doctor. *See, Tirado v. Bowen*, 842 F.2d 595, 598 (2d Cir. 1988) (district court can remand the case and direct the Commissioner to reopen and consider new evidence).

The Court finds that the ALJ's RFC determination is not supported by substantial evidence and must be reversed and remanded to the same ALJ for further consideration, including any additional evidence from medical sources regarding the sit/stand option and any medical proof of restrictions that would impact Seil's ability to perform work.

## THE ALJ'S DETERMINATION AT THE FIFTH STEP OF
## THE SEQUENTIAL ANALYSIS

As outlined above, the ALJ determined that Seil could perform two jobs. However, that conclusion is not supported by substantial evidence in the record. The complicating factor in this case is the VE's response to questions by Seil's counsel. When counsel interjected into the ALJ's hypothetical the condition that an individual worker "would have to, essentially, take an unscheduled break, hourly, for five minutes, where they [sic] would have to walk away from the work station," R. 63, the VE testified that, "I don't think the information clerk [job] could be done. You can't walk away when dealing with the public or a situation like that." R. 64. The information clerk position was the only position available to Seil after the ALJ introduced limitations in Seil's manual dexterity which eliminated the calculating machine operator job. R. 60–61. With the limitations of "occasionally handle and finger with the dominant right arm hand," R. 60, and having to get up at unscheduled times from a seated position and walk off the job, the Commissioner was unable to show that Seil could perform any position available in the national economy. Therefore, the Commissioner's determination at the fifth step of the sequential analysis, that Seil could perform the sedentary positions of calculating machine operator or information clerk, is not supported by substantial evidence.[1]

---

[1] Because the Court concludes that the finding at Step 5 is unsupported by substantial evidence concerning Seil's RFC, it does not address her further argument that "[t]he skills acquired from Bakery Supervisor would only transfer to other positions in the food industry and do not transfer to the jobs identified as a result of Hypothetical Question number 1: Information Clerk (#237.367-022) and Calculating Machine Operator (# 216.482-022)." Pl.'s Mem. of Law 30, ECF No. 7-1.

## THE ALJ'S FAILURE TO DEVELOP THE RECORD

Seil also argues that the ALJ failed to develop the record. On the issue of failure to develop the medical record, the ALJ wrote about the lack of medical support for Seil's complaints of physical limitations. He wrote:

> [T]he undersigned finds that the residual functional capacity presented herein is supported by the objective medical evidence contained in the record. Treatment evidence in the record does not sustain the claimant's allegations of disabling impairments. By way of example, the undersigned notes that the claimant alleges various limitations from herniated discs; however, there are virtually no medical records to hack up her allegations. Indeed, the observational and objective results reveal that the claimant's symptoms do not have the same constant and limiting effects that the claimant alleges *i.e.* during examinations, the claimant did not appear to be in pain; sensation was grossly intact; straight-leg raising was not always positive; no edema was noted; and/or the claimant ambulated without assistance (Exhibits 2F, p. 4; 7F, pp. 7, 9, 16). Additionally, the claimant was hospitalized in November 2010, but this admission was essentially as a result of symptoms from alcohol withdrawal (Exhibit 3F, pp. 26-27, and 34-35). As such, the undersigned finds that although the claimant experiences some limitations, they are not as severe as alleged by the claimant.

R. 24. In *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014), the medical source stated that the plaintiff needed "'regular comfort breaks,'" without indicating "the length of those breaks." *Id.* (quoting the record). Here, the relevant portion of the consultative examiner's report is that Seil had a "[m]ild limitation to . . . exertional activity in the standing position." R. 289. The doctor did not indicate what the "mild" limitation was, nor did she comment at all on what, if any, limitations Seil had with regard to sitting. Further, Dr. Khishchenko's note, assuming for the sake of argument that it was his recommendation, failed to specify any length of breaks necessary to alleviate Seil's back pain upon sitting or standing. With regard to that note, the Court is assuming that the ALJ, who is aware of the law, considered at least Dr. Khishchenko's phrase, "brief rest or changing positions will rapidly normalize these symptoms," was medical evidence, since he

9

incorporated a sit/stand option in his RFC determination. Yet, as the Commissioner's counsel conceded during oral argument, the time limitations in the ALJ's decision were wholly his own creation and without support in the record.

As previously stated, the Commissioner's own rule states that "Medical reports should include—(6) A statement about what you can still do…." 20 C.F.R. § 404.1513(b). The ALJ's decision fails to show how his RFC determination is substantially supported by the medical evidence in the record.

It is a longstanding rule in this Circuit that even when a claimant is represented by counsel, an ALJ is obligated to develop the record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. *Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)*. This duty exists even when the claimant is represented by counsel or, as here, by a paralegal."). Before fashioning his limitations on Seil's ability to stand, walk, or sit, the ALJ was obligated to obtain medical support, which does not exist in this record. Dr. Boehlert's vague description of a "mild limitation" on Seil's "exertional ability in the standing position," and Dr. Khishchenko's phrase, "brief rest or changing positions will rapidly normalize these symptoms," are insufficient to support the ALJ's conclusion that Seil could "stand and/or walk at least two hours in an eight hour day; sit about six hours in an eight hour day; be allowed to sit one [or] two minutes after standing for 15 minutes; be allowed to stand for one to two minutes … after sitting for 30 minutes." R. 59. The ALJ, therefore, failed to develop the record in light of his perceived functional limitations only partially supported by the medical evidence.

## THE ALJ'S CREDIBILITY DETERMINATION

With regard to the ALJ's determination that Seil was not credible in her complaints of pain, the ALJ was required to follow a two-step analysis. In his regulation entitled, "How we evaluate symptoms, including pain," the Commissioner states in pertinent part as follows:

> We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work (or, if you are a child, your functioning). However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you. (Section 416.927 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.) We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work (or if you are a child, your functioning).

20 C.F.R. § 416.929(a). Likewise, in SSR 96–7p, the Commissioner states that, "[u]nder the regulations, an individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled."

In his decision, the ALJ wrote that "[t]reatment evidence in the record does not sustain the claimant's allegations of disabling impairments." R. 24 (more fully quoted above). The records do reflect she suffered from "left sided radicular pain," and was re-

ferred by Dr. Robb to physical therapy "for pain control modalities," and was considering an "epidural injection." R. 208. The record shows she took 600 milligrams of Ibuprofen four times daily as needed. R. 306.[2] The consultative examiner noted "pain with ROM exercises of the left shoulder," as well as "[t]enderness over the lumbar spine and the paraspinal muscles on the right." R. 288. Raymond C. Montanaro noted that Seil "feels as though her left leg will give out on her," and that she could not shop without using a shopping cart for support. R. 303. The ALJ's decision fails to address these indications that Seil was suffering pain from the herniated and bulging discs, or address how the evidence supported, or did not support, her complaints about the extent of that pain.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ must develop the record to support his RFC determination, and reassess his credibility determination.

DATED:  March 17, 2016
       Rochester, New York

                                               /s/ Charles J. Siragusa
                                               CHARLES J. SIRAGUSA
                                               United States District Judge

---

[2] A dosage of 400 milligrams every four to six hours is indicated for mild to moderate pain. Ibuprofen (Oral Route) Proper Use - Mayo Clinic, http://www.mayoclinic.org/drugs-supplements/ibuprofen-oral-route/proper-use/drg-20070602 (last visited Mar. 10, 2016).